# The Norwich Fire Insurance Company

*v.*

## George Boomer.

1. Insurance—*of omission of assured to disclose his interest.* Upon an application for insurance, the party applying is bound to disclose all facts material to the risk, but, in the absence of a requirement on the subject in the policy, or of any inquiry in respect thereto, it is not essential that he should disclose the nature of his interest in the property sought to be insured. It is sufficient, if he have an insurable interest.

2. So, where a policy issued to a mortgagee of the property insured, contained no provision in respect to the disclosure of the nature of the interest in the property, except that the company would not be liable "for loss for property owned by any other party, unless the interest of such party be stated in this policy": *Held,* that this condition did not require the assured to disclose his interest when he made the application; on the contrary, by implication, it excused him from so doing.

3. Insurance—*by a mortgagor in the name of his mortgagee.* Where a mortgagor, in pursuance of an agreement for further security, pays the

premium on a policy of insurance effected on the mortgaged property in the name of the mortgagee, the property being afterward destroyed, the fact of the mortgagor having paid the debt secured by the mortgage, will not prevent a recovery of the insurance against the company. In such case, the mortgagor is the beneficial party, and has the right to recover the same in the name of the mortgagee.

4. SAME—*insurance by the mortgagee in his own name.* But, it seems, where a mortgagee applies for a policy, pays the premium, and effects the insurance in his own name, the company, on the occurrence of loss and payment by them of the insurance to the mortgagee, would be entitled to subrogation, and to an assignment of the mortgage. In such a case the insurance would be considered as a further security of the debt, and on the principle, that a surety who pays the debt, may resort to the principal debtor for payment, the insurer could recover from the mortgagor.

APPEAL from the Superior Court of Chicago; the Hon. WILLIAM A. PORTER, Judge, presiding.

The opinion states the case.

Mr. O. B. SANSUM, for the appellants, insisted that when a mortgagee applies for insurance, he must disclose the nature and extent of his interest, citing *Columbia Insurance Co.* v. *Lawrence,* 2 Peters, 49; Marshall on Ins. p. 789, b. 4. ch. 2; 10 Peters, 507; *Carpenter* v. *Providence Washington Insurance Co.* 16 Peters, 495.

Messrs. WAITE & CLARKE, for the appellee.

The nature or amount of the interest held by the assured on the property insured, *in the absence of specific inquiries as to the nature of such interest, and of conditions in the policy requiring it to be stated or disclosed,* need not be communicated to the insurer, or stated in the policy itself, and the assured, in case of loss, can recover to the extent of any interest he may have in the subject matter insured, however indirect; and it is in general sufficient, if the subject matter of the insurance and the nature of the risk are set forth in the policy, without

444          NORWICH FIRE INS. CO. *v.* BOOMER.          [Sept. T.,

Opinion of the Court.

any mention of the nature or character of the interest for which the insurance is intended as a protection. Angell on Ins. sec. 182; Phillips on Ins. 3d ed. vol. 1, page 223; *Strong* v. *Manufacturers' Ins. Co.* 10 Pick. 40; *Protection Ins. Co.* v. *Harmer*, 22 Ohio, 2 vol. N. S. 474; *Franklin Fire Ins. Co.* v. *Coutes*, 14 Md. 285; *Fletcher* v. *Com. Ins. Co.* 18 Pick. 419; *Tyler* v. *Ætna Ins. Co.* 12 Wend. 507; *Turner* v. *Burrows*, 5 Wend. 546; *Lock* v. *North American Ins. Co.* 13 Mass. 61; *Phelps* v. *The Gebhard Fire Ins. Co.* 9 Bosw. N. Y. 404; *Mutual Ins. Co.* v. *Deale*, 18 Maryland, 26; *Carter* v. *Humboldt Fire Ins. Co.* 12 Iowa, 287; *Caruthers* v. *Sheddon*, 6 Taunton, 16; *Traders' Ins. Co.* v. *Robert*, 9 Wend. 408, 409; Angell on Fire and Life Ins. ch. 8, secs. 182, 183, 184, 185 and 186.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of assumpsit, brought by appellee, in the superior court of Chicago, against appellants, on a policy of insurance. The policy was issued and bears date on the third of April, 1867, and covers a frame packing and slaughter house, with the alley or pens attached, known as Boyington, Cash & Wilder's Slaughter and Packing House, in Chicago; also the engine and boiler, machinery and pipes, hoisting machine and belts, and lard rendering tanks, water tanks and cooling vats, all contained in the building, for one year from that date, and insuring appellee against all immediate loss by fire, not exceeding $4000.

The policy contained several conditions, among which are, first, that the company shall not be liable if the applicant has made any erroneous representations materially affecting the risk; nor for loss if there was any prior or subsequent insurance without the written consent of the company; nor for loss of property owned by any other party, unless such interest is stated in the policy; second, the policy to become vitiated if the insured premises should become vacated by the removal of the owner or occupant for more than twenty days; third,

the assured not to recover of the company any greater portion of the loss or damage than the amount insured bears to the whole sum insured on the property. Within the year the property was partly destroyed by fire, and this action was brought to recover for the loss. After the fire, appellee took possession of the portion not destroyed, and sold it, and after deducting expenses, it yielded the sum of $1070. A trial was had, resulting in a verdict in favor of appellee, for $2757.56, upon which judgment was rendered by the court.

It appears that appellee, at the time the application was made, by the broker, only held a chattel mortgage on the property insured, and it is urged by appellants that, by failing to disclose the nature of his interest, the policy became void; that he was bound to disclose this as a material fact, and its suppression vitiated the policy. That he was bound to disclose all facts material to the risk, is no doubt true; but, in what respect it could be material that the company should know whether the interest was that of mortgagor or mortgagee, we are at a loss to perceive. It was, no doubt, material that he should have had an insurable interest, but it has, so far as we can find, never been held that the interest of a mortgagee was not of that character. All that he was bound to disclose, unless interrogated, was, that he had an insurable interest, and this he did, and in that the representations of his application are true. He was not asked by the company to state the nature of his title, nor did the terms of the policy require that he should. If the company had deemed it material, they would have propounded the necessary question to learn the fact, and inserted a clause that the policy should be void if the nature of his interest had not been fairly disclosed. Had the question been asked, and appellee had given a false statement in answer, then, it may be, a different question would have been presented.

That the company did not regard it material is clearly shown by the policy itself. We find, in limiting their liability, they say they will not be liable " for loss for property owned

by any other party, unless the interest of such party be stated in this policy." From this condition it is apparent they deemed it unnecessary appellee should disclose his own interest. It, by implication, says he need not, and no other inference can be drawn from the language. It, however, discloses the fact that the company did regard it material, where one person insures the property of another, that the assured should state the nature of the interest of the owner in the property. Neither reason, authority, nor the contract of assurance, so far as we can see, required appellee, unless interrogated, to state the nature of his interest in the property insured.

It is again urged that, inasmuch as the mortgagors paid the debt to appellee before the recovery in the court below, and the mortgagee has sustained no loss, he is not entitled to recover. Had appellants paid this loss before the mortgagors paid the debt to appellee, then the question of their right to subrogation would have been presented for consideration ; but, inasmuch as appellants had not done so, the questions presented are of a different character. Had appellee applied for the policy, paid the premium, and effected the insurance, and on the occurrence of this fire appellants had paid the loss, they would no doubt have been entitled to subrogation, by an assignment of the mortgage. In such a case, the insurance would be considered as a further security of the debt, and on the familiar principle that a surety who pays the debt may resort to the principal debtor for payment ; in such a case the insurer might, no doubt, resort to the mortgagor for payment.

But in this case the mortgagors paid the premium, and obtained the policy, in pursuance to an agreement with the mortgagee before it was effected. The mortgagors procured it as a part of the security they agreed to give appellee for the debt they owed him. It was, then, in equity, their policy, and not appellee's, although in his name. Had the mortgagors paid the premium, and obtained the policy in their names, the question could not have arisen. Then why, when they, in pursuance of their agreement, pay the premium, should they

not be regarded as the beneficial assured, when they shall have paid the debt and released the property ? In such a case they seem to have strong equitable, as well as legal, claims to pay for the loss, and should be permitted to use the name of the mortgagee to recover. Had they taken this policy in their own names, with the loss payable to appellee, according to his interest, and they had subsequently paid the debt, no one, we presume, would question their right to sue in the name of the mortgagee, and recover for their own use.

We understand it to be the settled law that, when the mortgagor or pledgor insures the property, and a loss occurs, he may recover because he has an insurable interest in the property, and reason and justice require that when he pays the premium, although he insures in the name of the incumbrancer, and he afterwards pays the debt, he should be permitted to recover for loss to the property. And this rule is supported by the authorities. *King* v. *The State Mutual Fire Insurance Co.* 7 Cush. 1 ; *Concord Union Mutual Fire Insurance Co.* v. *Woodbury*, 45 Me. 447 ; *Kernochan* v. *The New York Fire Insurance Co.* 17 N. Y. R. 428. The first of these cases, however, goes further, and holds that the mortgagee may insure, and, in case of loss, may collect his debt and recover on the policy ; and the insurer has no right to subrogation. But these latter propositions are not in harmony with the current of the authorities, but the opinion sustains the rule we have announced.

It is again urged that the premises became vacant for more than twenty days, and the policy became void under the condition in the policy. A careful examination of the evidence discloses the fact that the premises were not vacated. Boyington, Cash & Wilder had ceased to manufacture meats and their produce as early, at any rate, as the twenty-fifth of March, and the insurance was effected on the third of April following. The property insured was not removed, but it only ceased to be used for manufacturing purposes. No one resided in the property to remove from it, or to vacate it, and a watchman

was employed to guard it after the policy was issued, as he had before. In fact, so far as we can see, no change whatever took place as regards the occupancy of the premises after the policy was issued. As there were no representations as to its occupancy in the application, no reason is perceived why any forfeiture could be declared because it remained in the same condition until the fire occurred. There was, in fact, no vacation of the property after the policy was issued. It was occupied up till the fire as it was on the day the insurance was effected.

We now come to consider the remaining point urged by appellants; that is, that other insurances were effected by Boyington, Cash & Wilder, without the written consent of appellants. The policy declares that other prior or subsequent insurance on the property therein described shall vacate the policy, unless consent is given by the company, in writing. It appears that other insurance was effected by Boyington, Cash & Wilder, and that consent was given therefor to the amount of $2500, by the policy itself. But it is not pretended that appellee ever procured any, or that any other policy was issued in his name. But it is claimed that Boyington, Cash & Wilder did obtain other policies to a large amount, and without the written consent of the company. Inasmuch as appellants have not abstracted the evidence upon which they raise this question, we should have supposed they placed no great reliance upon it, had they not urged it with apparent earnestness in their argument.

In the body of the policy we find that other insurance is allowed to the amount of $2500. And from a careful examination of the record we find that, on the same day this policy was issued, Boyington, Cash & Wilder took a policy from the Albany City Fire Insurance Co. of $2000, on grease, tallow, and meats, their own, and held for others by them, in trust, &c. contained in their packing house. It will be observed that, although the property insured by this policy may have been in the same building, it was not the same covered by appellee's

policy. It was on different property, and hence could, in no wise, affect the validity of the policy in controversy.

It appears, from an agreement between Boyington, Cash & Wilder and appellee, which is set out in the record, that the firm had obtained a policy for $2500 of the Mutual Security Company. It does not, however, appear that this policy embraced the same property, and unless it did, it could in no way invalidate this policy. We have examined, with some care, the great volume of questions and answers contained in this record, and fail to find any other proof of other insurance on this property. As appellant's counsel has given no reference to the page where such evidence may be found, and after much time spent in a fruitless search for it, we conclude that the record does not contain it.

It then becomes unnecessary to determine whether, as Boyington, Cash & Wilder had effected the insurance in the name of appellee, and paid the premium, and being entitled to receive the insurance money, they would have lost the right by taking other policies contrary to the conditions contained in this. Had it appeared that there were other policies in their name beyond the sum specified in this policy, then that question would have been presented. The judgment of the court below is affirmed.

*Judgment affirmed.*