# Commercial Fire Insurance Company v. Capital City Insurance Co.

*Action by Assignee of Fire Insurance Policy.*

1. *Pleading; insurance* —To sustain an action on a policy of insurance against fire, there must have been, when the policy was taken out, and when the loss occurred, such right or ownership as amounts to an insurable interest, and the plaintiff must show that he is entitled to assert that interest; but, under the forms of pleading prescribed and authorized by the Code (Form No. 16, p. 704, § 2979), it is not necessary that the complaint should aver either of these facts.

2. *Contract for building ; property rights thereunder.*—When a builder contracts to furnish materials and build a house for another person, at a stipulated price, payable in installments as the work progresses, no property in the house vests in that person until it is finished and delivered, or, at least, until it is ready for delivery and approved.

3. *Same ; insurable interest ; who may maintain action.*—If the builder in such case, takes out a policy of insurance on the house during its construction, and it is destroyed by fire before completion, the loss is his, although he may have received partial payment by installments; and having assigned the policy to the person for whom the house was built, the latter may maintain an action on it, or may assign it to another person, with whom he had effected insurance on the house.

[Commercial Fire Ins. Co. v. Capital City Ins. Co.]

APPEAL from the Circuit Court of Montgomery.
Tried before the Hon. JNO. P. HUBBARD.
The facts are stated in the opinion.

TROY, TOMPKINS & LONDON, for appellants.

SAYRE & GRAVES, contra.

STONE, C. J.—It can not be questioned, that to maintain
an action, such as the present one, there must have been,
when the policy was taken out, and when the loss occurred,
such ownership or right as amounts to an insurable interest,
and the plaintiff must show himself entitled to assert that
interest.—Lynch v. Dalzel, 3 Bro. Parl. Ca. 497 ; Sadlers' Com-
pany v. Badcock, 2 Atk. 554 ;  Wilson v. Hill, 3 Metc. (Mass.)
66 ; 1 Phil. on Insurance, 59 ; May on Insurance, §§ 115, 116.

Form 16, Code of 1876, p. 704, is framed for a suit on a
policy of insurance.   It contains no averment of property,
or insurable interest in the plaintiff.   In section 2979 of the
Code it is provided that " any pleading which conforms
substantially to the schedule of forms attached to this part
is sufficient."   Form 16 is one of said forms.   It must be
inferred that the legislature treated the averment that the
policy was issued by the insurance company, as the equiva-
lent, prima facie, of an averment that the assured owned an
insurable interest in the property.   Each count in the com-
plaint is sufficient, and the demurrer to it was rightly over-
ruled.—2 Brick. Dig. 344-5.

On May 26, 1884, T. J. Holt, a builder and contractor,
entered into a written agreement with Mrs. Barrett, by which
he bound himself to furnish the materials and build a house
for her according to certain plans and specifications—the
house to be completed by October 1, 1884, with stipulated
forfeiture in case the house was not finished by the agreed
time.   Mrs. Barrett promised and agreed to pay Holt, for
so building the house, " two thousand and sixty-five dollars,
which payments are to be made in installments as the work
progresses, but she shall reserve at least three hundred
dollars of said money until after the full completion of said
house."

On August 11, 1884, the building being in progress, Holt,
the contractor, took out a policy in the Commercial Fire In-
surance Company, insuring the building against damage by
fire in the sum of two thousand dollars, and for two months,
extending to October 10, 1884.   The policy, by its terms,
insures Holt, his representaatives and assigns "against loss
or damage by fire, to the amount of two thousand dollars,

21

builders' risk, on the frame store-house and dwelling, now in process of erection," describing its locality. The house was nearing completion, and Mrs. Barrett had paid Holt near nineteen hundred dollars on his contract, when on September 15, 1884, it was totally destroyed by fire.

On August 30, 1884, after Mrs. Barrett had so made the advance payments to Holt, she took out a policy from the Capital City Insurance Company, insuring said house to her, for the term of twelve months, "against loss or damage by fire to the amount of two thousand dollars, permission granted to complete the construction of said building and fences. Loss, if any, payable to the Home Building and Loan Association, as its interest may appear." The house, when destroyed, was still in the possession of the contractor, not having been delivered up to Mrs. Barrett. On the foregoing facts, it is contended for appellant that Holt had no insurable interest in the property, and that this action can not be maintained.

After the fire, the policy issued by the Commercial Fire Insurance Company was assigned and transferred by Holt to Mrs. Barrett, and by her to the Capital City Insurance Company. The latter company brings this suit on said policy. We are not informed on what consideration these assignments were made. Possibly, Holt's transfer was made in exoneration of an asserted liability resting on him to rebuild the house, the first not having been completed and delivered to Mrs. Barrett. Possibly, the Capital City Insurance Company paid the loss to Mrs. Barrett, or to her appointee, and she in consideration thereof transferred to it the policy sued on in this action. If these surmises be true, this is but a contest between the two insurance companies as to which shall bear the ultimate loss.

"It may be said generally," says May in his work on insurance, § 76, speaking of what will constitute an insurable interest, "that while the earlier cases show a disposition to restrict it to a clear, substantial, vested pecuniary interest, and to deny its application to a mere expectancy without any vested right, the tendency of modern decisions is to relax the stringency of the earlier cases, and to admit to the protection of the contract whatever act, event, or property bears such a relation to the person seeking insurance, that it can be said with a reasonable degree of probability to have a bearing upon his prospective pecuniary condition. . . . Yet such a connection must be established between the subject-matter insured and the party in whose behalf the insurance has been effected as may be sufficient for the purpose of deducing the existence of a loss to him from the

occurrence of an injury to it." And in § 80, the same author
says : "Whoever may fairly be said to have a reasonable
expectation of deriving pecuniary advantage from the pres-
ervation of the subject-matter of insurance, whether that
advantage inures to him personally, or as the representa-
tive of the rights or interests of another, has an insurable
interest. . . . That the person may suffer loss is a suffi-
cient foundation for his claim to an insurable interest."
Wherever property, either by force of law, or by the con-
tract of the parties, is so charged, pledged, or hypothecated
that it stands as a security for the payment of a debt, or
the performance of a legal duty, each of the parties—the
owner of the lien, and the person against whose property it
exists—has an insurable interest in the property. The one,
that the security shall remain sufficient; the other, that it
may be kept unimpaired and the property restored to his
use or enjoyment in whole or in part, after the incumbrance
is relieved. And each may insure his separate interest at
one and the same time without incurring the imputation of
double insurance, provided the applications and policies are
the individual and separate acts of each.—May on Insur-
ance, §§ 80 to 87 inclusive ; 1 Arnold on Insurance, *229 *et
seq. ;* Flanders on Fire Insurance, 342 *et seq. ; Columbia Ins.
Co. v. Lawrence,* 2 Pet. 25 ; *Insurance Co. v. Stinson,* 103 U.
S. 25 ; 4 Field's Lawyers' Briefs, 282 *et seq. ; Traders' Ins.
Co. v. Robert,* 9 Wend. 404 ; *Tyler v. Ælna Fire Ins. Co.,* 12
Wend. 507 ; *Cone v. Niagara Ins. Co.,* 60 N. Y. 619 ; *Sturm
v. Atlantic Mut. Ins. Co.* 63 N. Y. 77 ; *Harvey v. Cherry,* 76
N. Y. 436 ; *Cumberland Bone Co. v. Andes Ins. Co.,* 64 Maine,
466 ; *Hough v. Peoples' Fire Ins. Co.,* 36 Md. 400 ; *Franklin
Fire Ins. Co. v. Coates,* 14 Md. 285 ; *Protection Fire Ins. Co.
v Hall,* 15 B. Mon. 411 ; *Agricultural Ins. Co. v. Clancey,* 9
Bradwell, 137 ; *Carter v. Humboldt Fire Ins. Co.,* 12 Iowa,
287. In the last case it was said, "any interest is insurable,
if the peril against which insurance is made would bring
upon the insured, by its immediate and direct effect, a
pecuniary loss."

There are cases in the books where persons having only
a lien on property to secure the payment of money due
them, have, with their own means and in their own names,
taken insurance on such property, the lienor having no par-
ticipation or agency in procuring the insurance, and not
being in any manner provided for in the policy. Property
insurance being only a contract of indemnity personal to
the assured, it is held that destruction of the property and
payment of the loss does not inure to the benefit of the
debtor who has pledged the security. It leaves the debt

still subsisting, unaffected by the payment of the loss. The reasons assigned are, that the debtor paid nothing for the insurance, did not solicit it, and the policy makes no provision for his indemnification. In such cases, the debt remains in full force and collectable, the same as if nothing had been paid on the policy.—*White v. Brown*, 2 Cushing, 412; *King v. State Mut. Fire Ins. Co.*, 7 Cush. 1; *Suffolk Fire Ins. Co. v. Boyden*, 9 Allen, 123; *Cushing v. Thompson*, 34 Me. 496; *Concord Union Mut. Fire Ins. Co. v. Woodbury*, 45 Me. 447; *Hadley v. N. H. Fire Ins. Co.*, 55 N. H. 110; *Steele v. Franklin Fire Ins. Co.* 17 Penn. St. 290; *Ely v. Ely*, 80 Ill. 532; *Altharpe v. Wolfe*, 22 N. Y. 355; *Hamner v. Johnson*, 44 Ill. 192. See, also, *Mer. Ins. Co. v. Mazange*, 22 Ala. 168; *Al. Mar. Ins. Co. v. La. St. Ins. Co.*, 8 La. 1; *King v. Preston*, 11 La. An. 95; *Clinton v. Ins. Co.*, 45 N. Y. 454; *Henson v Blackwell*, 4 Hare, 434. It can not be denied, however, that in cases of this character, the creditor realizes double satisfaction—a result somewhat opposed to sound, commercial morality.

Another principle, however, is gaining foothold, which may be considered the natural outgrowth of the seeming hardship of the double satisfaction mentioned above. It recognizes the fact that the two interests, such as that of mortgagor or lienor on the one side, and mortgagee or lienee on the other, and all kindred relations, are each separately insurable. It treats the insurance obtained on property thus held, when there are no stipulations to the contrary, as simply an insurance of the interest of the party who obtains the policy, and in no broader sense an insurance of the property. Hence, when one holding property in mortgage, pledge, or hypothecation, as security merely, obtains insurance upon it, he simply strengthens his security, and obtains indemnity against its impairment by the casualty insured against. The insurer in such case is held to be a guarantor, or indemnifier of the insured, that the debt or duty shall not become lost or forfeit, by the destruction of the security or pledge. If the debt be paid, or duty performed, then even a destruction of the property insured gives no right of action against the insurer. And if, in case of fire, the insurer indemnifies the assured by paying the loss, such insurer thereby becomes subrogated to the rights of the creditor or lienee against the debtor, and may compel payment, in reimbursement of the loss it had paid. In the case of *Sussex Co. Mut. Ins. Co. v. Woodruff*, 2 Dutcher, 541—a case before the New Jersey Court of Errors and Appeals—this precise question was considered in a very important case. The court said : "A mortgagor and mort-

gagee may both insure their respective interests in the same
building.    The mortgagee insures his *debt ;* and if before the
policy expires the debt is paid, from that time the policy
ceases to have any operation.    The mortgagor has no inter-
est in such a policy.    If the property is destroyed by fire,
the insurer, upon paying the insurance, is entitled to an
assignment of the mortgage, if the money paid amounts to
the sum secured by the mortgage.    If it is less, then he has
an equitable lien upon the security in the hands of the
mortgagee, to the extent of the insurance money so paid."

The case of *North British & Mer. Ins. Co. v. London, Liverpool
& Globe Ins. Co.*, 5 Law Rep. Ch. Div. 569, was decided in 1877.
It was a great case.    Great by reason of the amount in-
volved, and great because it was heard before the Lord
Justices of the High Court of Justice of England.    The
facts were that Barnett & Co. were wharfingers, and doing
a storage business at Rotherhithe.    The measure of their
liability for merchandise stored with them was, by custom of
trade, precisely that of common carriers.    They were insurers
against all casualties, save those resulting from the act of
God, or public enemies.    All merchandise stored with them
was fully covered by insurance policies, issued by various
insurance companies to them, their interest being described
in the policies as "the assured's own, in trust, or on com-
mission, for which they are responsible."    The North British
and Mer. Ins. Co. had issued to them one of these poli-
cies, which was of force at the time of the loss hereafter
described.    Rodocanachi & Co., merchants, had stored with
Barnett & Co. merchandise worth forty thousand pounds
sterling, on which they had partial insurance in their own
favor as merchants.    The London, Liverpool and Globe In-
surance Company had issued one of the policies to Rodocan-
achi & Co.    The merchandise was destroyed by fire, not the
act of God, nor of the public enemy, and the insurers of Bar-
nett & Co. fully indemnified them for the loss, who there-
upon paid Rodocanachi & Co. their share of the loss.    This
suit was then brought by one of the insurers of Barnett &
Co., which had aided in paying their loss, against the Lon-
don, Liverpool and Globe Insurance Company to compel
the latter company to make contribution.    The prayer of
the bill was denied.    The principle of the decision may be
gathered from the following language, extracted from the
opinions in the cause.

The Lord Justice said: "There may be cases where,
although two different persons insured in respect of differ-
ent rights, each of them can recover the whole, as in the
case of mortgagor and mortgagee.    But whenever that is

the case it will necessarily follow that one of these two has a remedy over against the other, because the same property can not in value belong at the same time to two different persons. Each of them may have an interest which entitles him to insure for the full value, because in certain events, for instance, if the other person become insolvent, it may be he would lose the full value of the property, and therefore would have in law an insurable interest; but it must be that if each [has the right to] recover the full value of the property from their respective offices with whom they insure, one office must [in the nature of things], have a remedy against the other. I think whenever that is the case, the company which has insured the person who has the remedy over, succeeds to his right of remedy over, and then it is a case of subrogation." To the same effect are the following authorities : *Ætna Fire Ins. Co. v. Tyler*, 16 Wend. 385 ; *In re Kip v. Receivers Mut. Fire Ins. Co.*, 4 Edw. Ch. 86 ; *Excelsior Ins. Co. v. Royal Ins. Co.*, 55 N. Y. 343 ; *Honore v. Lamar Fire Ins. Co.*, 51 Ill. 409; *Norwich Fire Ins. Co. v. Boomer*, 52 Ill. 442 ; *Westchester Fire Ins. Co. v. Foster*, 90 Ill. 121 ; *Godsall v. Boldero*, 9 East, 72.

May, in his excellent work on insurance, § 457 and note, scarcely gives his full assent to the doctrine stated above, when applied to cases of mere contract liability to answer over. We think, however, that the principle stands on impregnable grounds, and will follow it.

It is certainly true that the contract between Holt and Mrs. Barrett rested on what are called in the books independent covenants. He was not required to wait until the entire work was completed before demanding his pay ; at least, before demanding all except three hundred dollars of the entire price.—*Davis v. Preston*, 6 Ala. 83 ; *Terry v. Duntze*, 2 H. Blackst. 389 ; *Cunningham v. Morrell*, 10 Johns. 212 ; *Richardson v. Shaw*, 1 Mo. App. 234. *Cunningham v. Morrell*, departs from *Terry v. Duntze*, in one particular, not material to this case. *Partridge v. Forsyth*, 29 Ala. 200, is relied on, as showing, first, that the contract in the present case was not an entire one ; and, second, that Holt had no insurable interest, and therefore there can be no recovery. *Partridge v. Forsyth* did not present its points very saliently. Examining the report of that case, it can not fail to be seen that the appellee obtained in the trial court all his testimony entitled him to, if not more. The question of merit presented in this court was, whether there was any testimony tending to disprove the entirety of the contract. We held there was ; and there being no error in the rulings of the court on this question the judgment of the trial court

[Commercial Fire Ins. Co. v. Capital City Ins. Co.]

was affirmed. As we have said, that case presented the sin-gle inquiry, whether Forsyth's completion of the building was a condition precedent to his right to demand compensation as the work progressed; and we ruled there was some testimony tending to disprove such term of the contract. Whether Forsyth, the contractor, was under a corresponding, independent covenant to rebuild, complete, and deliver the house after the burning, was neither presented, decided, nor considered.

The real question in this case is, whether Holt, at the time of the fire, had an insurable interest in the building. That depends on another inquiry; was he bound under his contract to rebuild the house, in the event of its destruction before completion and delivery, or, failing to do so, was he bound to refund to Mrs. Barrett the money she had paid him? In discussing this question, we may treat the Capital City Insurance Company and Mrs. Barrett as one, and the Commercial Fire Insurance Company and Holt as one. Or, we may ignore both policies of insurance, and treat the contention as a suit by Mrs. Barrett against Holt, to recover damages for not building and completing the house according to the plans and specifications. If she could recover in such suit, then Holt's liability to her constituted an insurable interest in him, and the present action is maintainable.

There are cases which hold that when a ship-builder contracts to build or repair a ship and furnish the materials, at an agreed price, but to be paid in installments as the work progresses, the ship becomes the property of the employer, *pro tanto*, as the payments are made.—*Wood v. Bell*, decided in Queen's Bench, 5 Ellis & Blackb. 772, and in the Court of Exchequer, 6 *b.* 355; s. c. 34 Eng. L. and Eq. 178; *Wood v. Assignee*, 5 B. & Ald. 942; *Clark v. Spence*, 4 Adolph. & Ellis, 448. These, however, were cases where the ship-builder had become bankrupt, and the question was whether the employer, whose money had probably procured the materials and paid for the labor, should be remitted to the status of a general creditor. They were cases of hardship, and the rulings sustained the claims of the employers. So, in the case of *Monetone v. Athawes*, 3 Burroughs, 1592, the question arose on the repairs of a ship, where the ship was burned in dock before the repairs were completed. Lord Mansfield ruled that the owner was liable for the work which had been done before the ship was burned. A distinction may perhaps be drawn between a claim for repairs, and the claim for the construction of an entire ship.

So, in Chitty on Contracts (8 Amer. ed.), *474, is this language: "The destruction of work by an accidental fire, or

other misfortune, before it is finished or delivered, does not deprive the workman of his right of remuneration to the extent of the work performed, unless by the express and uniform custom of the trade, no payment is to be made until the work is completed and delivered. The author cites in support of the first principle the case of *Monetone v. Athawes, supra,* and in support of the exception another ruling of Lord Mansfield, found in *Gillet v. Mawman,* 1 Taunt. 137. In the latter case a printer had bound himself to print and deliver a number of copies of a book, had completed and delivered a part, when the residue, in an incomplete state, were burned. He sued to recover for the copies delivered, and it was ruled he could not recover. It is doubtful if this ruling can be vindicated, unless the books delivered in part performance had been restored to the printer.

In *Andrews v. Durant,* 1 Kernan, 35, the foregoing cases were reviewed, and the doctrine ably discussed by Judge Denio. He dissented from them entirely, as declarative of a general principle, and fortified his opinion with an ample array of authorities. He said: "In general a contract for the building of a vessel or other thing not yet *in esse,* does not vest any property in the party for whom it is agreed to be constructed, during the progress of the work, nor until it is finished and delivered, or at least ready for delivery, and approved by such party. And the law is the same though it be agreed that payments shall be made to the builder during the progress of the work, and such payments are made accordingly." And the following cases fully sustain the doctrine asserted by Judge Denio : *Mucklow v. Mangles,* 1 Taunt. 318 ; *Adams v. Nichols,* 19 Pick. 275 ; *Boyle v. Agawam Canal Co.,* 22 Pick. 381 ; *Laidler v. Burlinson,* 2 Mees. & Wels. 602 ; *Merritt v. Johnson,* 7 Johns. 473 ; *Johnson v. Hunt,* 11 Wend. 135 ; *Gregory v. Stryker,* 2 Denio, 628 ; *Halterline v. Rice,* 62 Barb. 593 ; *Scull v. Shakespeare,* 75 Penn. St. 297 ; *Philadelphia v. Brooks,* 81 Penn. St. 23 ; *West Jersey R. R. Co. v. Trenton Car Works Co.,* 32 N. J. (Law) 517 ; *Elliott v. Edwards,* 35 ib. 265 ; s. c. 36 ib. 449 ; *Williams v. Jackman,* 16 Gray, 514 ; *Wright v. Tetlow,* 99 Mass. 397 ; *Green v. Hall,* 1 Hous. (Del.) 506 ; *Cowgill v. Ford,* 2 ib. 164 ; *Calais Steamboat Co. v. Scudder,* 2 Black. U. S. 372 ; 1 Benj. on Sales (4th Amer. ed.), §§ 408-413.

It will be seen by comparing the authorities cited above that the American rule differs from the English. We think those on this side the Atlantic rest on a much sounder basis, and we will follow them.

The house not having been finished nor delivered by Holt

[Ala. Gold Life Ins. Co. v. Mobile Mutual Ins. Co.]

to Mrs. Barrett, its destruction was his loss.    He therefore
had an insurable interest.
    Affirmed.

CLOPTON, J., not sitting.